IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MILE HIGH LABS, INC.,

    Plaintiff,

v.

WARRENDER ENTERPRISE, INC. d/b/a LIFTED LIQUIDS,

    Defendant.

## COMPLAINT

Plaintiff Mile High Labs, Inc. ("Mile High") alleges as follows:

### INTRODUCTION

1. This action arises from Defendant Warrender Enterprise, Inc. d/b/a Lifted Liquids' ("Lifted Liquids") breach of contract, civil theft, and fraud in connection with its March 2019 purchase of 150 kilograms ("kgs") of extracted CBD isolate ("isolate") from Mile High.

2. Lifted Liquids agreed to purchase 150 kgs of isolate from Mile High for $825,000, with payment in full due upon receipt. Mile High thereafter shipped Lifted Liquids 150 kgs of isolate, which Lifted Liquids accepted. Nevertheless, in violation of the parties' agreement, Colorado law, and fundamental fairness, Lifted Liquids has not paid and refuses to pay Mile High for the product.

3. As a remedy for these wrongs, Mile High seeks monetary damages of more than $800,000 for Lifted Liquids' refusal to pay for isolate it received and treble damages for Lifted Liquids' civil theft. Mile High also seeks recovery for its attorneys' fees.

## THE PARTIES

4. Mile High Labs, Inc., is a Colorado corporation with a principal place of business at 697 N. Denver, Unit A&D, Loveland, CO 80538.

5. Upon information and belief, Defendant Warrender Enterprise Inc. d/b/a Lifted Liquids is incorporated under the laws of the state of Wisconsin with its principal place of business at 12715 210th Avenue, Bristol, WI 53104.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

7. The Sales Orders the parties entered into, as described in more detail below, had a Colorado choice of law provision.

8. The parties entered into the Sales Orders, as described in more detail below, in Colorado.

9. In March 2019, Lifted Liquids visited Mile High's Colorado facilities.

10. The events and omissions giving rise to this lawsuit arise, at least in part, out of Lifted Liquids' visit to Mile High's Colorado facilities.

11. The isolate that is at issue in this lawsuit was manufactured in Colorado and distributed from Colorado.

12. This Court has personal jurisdiction over Lifted Liquids because of its continuous and systematic contacts with the state of Colorado, because this matter arises out of Lifted Liquids' activities in the state of Colorado, because Lifted Liquids purposefully directs its

activities at the state of Colorado and its residents, and because Lifted Liquids purposefully avails itself of the privilege of conducting activities and business in the state of Colorado.

13. Venue is proper within this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

14. Lifted Liquids is a manufacturer and seller of liquid CBD products.

15. Mile High is a wholesale supplier of CBD ingredients.

16. Upon information and belief, Mr. Nick Warrender is Lifted Liquids' founder and Chief Executive Officer.

### A. The Parties' Course of Dealing

17. On or about March 19, 2019, Lifted Liquids entered into a transaction with Mile High to purchase 10 kgs of isolate from Mile High at a price of $5,500 per kg ("Invoice 1857").

18. The Sales Order associated with Invoice 1857—which Lifted Liquids signed—stated that Lifted Liquids had seven days to inspect the product for defects and reject it; otherwise Lifted Liquids agreed that it could not return the isolate to Mile High. The Sales Order also stated that payment was to be "in full" and due upon receipt.

19. On or about March 19, 2019, Mile High billed Lifted Liquids $55,000 for 10 kgs of isolate. The same day, Lifted Liquids wired $55,000 to Mile High.

20. On or about March 19, 2019, Lifted Liquids also purchased 30 kgs of isolate from Mile High at a rate of $5,200 per kg ("Invoice 1865").

21. The Sales Order associated with Invoice 1865—again, which Lifted Liquids signed—stated that Lifted Liquids had seven days to inspect the product for defects and reject it;

otherwise Lifted Liquids agreed that it could not return the isolate to Mile High. The Sales Order also stated that payment was to be "in full" and due upon receipt.

22. On March 20, 2019, Mile High billed Lifted Liquids $156,000 for 30 kgs of isolate. The next day, on March 21, 2019, Lifted Liquids wired $156,000 to Mile High.

23. At no time on March 19 or 20, 2019, did Mile High and Lifted Liquids ever enter into a contingency contract for the sale of isolate.

24. The March 19 and 20, 2019 orders are the only ones Lifted Liquid placed from Mile High prior to March 22, 2019.

**B.     The Subject Sale**

25. On or about March 22, 2019, Lifted Liquids signed a Sales Order for 300 kgs of isolate at a price of $5,250 per kg, for a total of $1,575,000. (Exhibit A, attached.) Like the parties' prior Sales Orders, the March 22, 2019 Sales Order stated that payment was to be "in full" and due upon receipt. (*Id.* ¶ 2.)

26. Ralph Taylor III signed the March 22, 2019 Sales Order on behalf of Lifted Liquids, which he was authorized to do pursuant to a Credit Application Form that Lifted Liquids signed acknowledging that Mr. Taylor "can sign contracts and/or authorize purchase orders/work orders on behalf" of Lifted Liquids. (*Id.*)

27. On or about March 28, 2019, Lifted Liquids decided to order 150 kgs of isolate instead of 300 kgs. Lifted Liquids' order of 150 kgs of isolate is hereinafter referred to as the "Sale."

28. Because Lifted Liquids decided to buy a lower quantity of isolate than what it had originally ordered and agreed to on March 22, 2019, the parties agreed to a price of $5,500 per kg for the Sale, rather than $5,250 per kg, for a total of $825,000 for the 150 kgs of isolate.

29. Mile High and Lifted Liquids intended and agreed that the Sale would be governed by the same terms as Lifted Liquids' previous purchases. That is, Mile High agreed to sell isolate at an agreed-upon price and Lifted Liquids agreed to pay "in full" upon receipt.

30. Mile High and Lifted Liquids discussed that Mile High would send the 150 kgs of isolate from two separate facilities.

31. On or about March 28, 2019, and in furtherance of the Sale, the parties initially executed a Sales Order for 20 kgs of isolate at $5,500 per kg from one of Mile High's facilities. (Exhibit B, attached.) Like the parties' prior Sales Orders, the March 28, 2019 Sales Order stated that payment was to be "in full" and due upon receipt. (*Id.* ¶ 2.) Mr. Warrender signed the March 28, 2019 Sales Order. (*Id.* at 4.)

32. Like the parties' prior Sales Orders, the March 28, 2019 Sales Order also stated that Lifted Liquids had seven days to inspect the product for any defects and reject the product on that basis; otherwise Lifted Liquids agreed that it could not return the isolate.

33. Thereafter, and also on March 28, 2019, Lifted Liquids ordered and Mile High agreed to provide an additional 130 kgs of isolate at $5,500 per kg from another of Mile High's facilities. This rounded out the full amount of Lifted Liquids' order of 150 kgs of isolate, pursuant to the Sale.

34. On or about April 1, 2019, Mile High sent an invoice to Lifted Liquids totaling $825,000 for the entire 150 kgs of isolate that Lifted Liquids ordered. (Exhibit C, attached.) Like

the parties' previous transactions, the April 1, 2019 invoice stated that payment was due "on receipt." (*Id.*)

35. Lifted Liquids did not, in April or May 2019, notify Mile High of any objection to the total amount due of $825,000 stated in the April 1, 2019 invoice. Nor did Lifted Liquids, in April or May 2019, notify Mile High that there was any error on the April 1, 2019 invoice regarding the quantity or price of isolate listed. Nor did Lifted Liquids, in April or May 2019, notify Mile High that it would not pay "in full" for 150 kgs of isolate on receipt.

36. Instead, Lifted Liquids requested that Mile High promptly ship 150 kgs of isolate.

37. On or about April 2, 2019, Mile High shipped ten boxes of isolate via UPS next day air and 19 boxes of isolate via UPS ground to Lifted Liquids. The 29 boxes contained 150 kgs of isolate.

38. On April 2, 2019, Mile High sent tracking information for the shipment of 150 kgs of isolate via email to Mr. Warrender at Lifted Liquids. Mr. Warrender responded in writing to Mile High's email by stating, "Thank you." (Exhibit D, attached.)

39. Lifted Liquids accepted receipt of the 29 boxes of 150 kgs of isolate on or about April 3, 2019.

40. Despite accepting receipt of 150 kgs of isolate on or about April 3, 2019, Lifted Liquids did not, at that time, pay Mile High anything for the isolate, and in fact has never paid Mile High anything for the isolate.

41. Lifted Liquids did not, in April or May 2019, provide Mile High notice of any objection regarding any of the isolate contained in the 29 boxes.

42. Lifted Liquids did not, in April or May 2019, reject the 150 kgs of isolate.

43. At no time in April or May 2019, did Mr. Warrender or any other Lifted Liquids employee notify Mile High that Mile High's shipment of 150 kgs of isolate was in error or that Lifted Liquids did not order the product or quantity Mile High shipped.

44. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee inform Mile High that Lifted Liquids did not agree to pay $825,000 for the Sale.

45. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee notify Mile High that Lifted Liquids did not agree to a price of $5,500 per kg of isolate for the Sale.

46. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee notify Mile High that Lifted Liquids did not agree to pay Mile High "in full" for the 150 kgs of isolate upon receipt.

47. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee notify Mile High of an objection to the contents or terms of the March 28, 2019 Sales Order.

48. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee notify Mile High of an objection to the contents or terms of the April 1, 2019 invoice.

49. At no time in April or May 2019 did Mr. Warrender or any other Lifted Liquids employee notify Mile High of an objection to Mile High's April 2, 2019 email, informing Liquid Liquids it was shipping Lifted Liquids 29 boxes.

50. Rather, Lifted Liquids led Mile High to believe that the parties had reached a full and final agreement on the Sale terms; namely, that Mile High would sell, and Lifted Liquids would buy, 150 kgs of isolate for a total purchase price of $825,000.

51. On or about June 14, 2019—more than 60 days after Lifted Liquids accepted receipt of 150 kgs of isolate—Lifted Liquids for the first time expressed an objection to Mile High regarding the Sale. On or about June 14, 2019, Lifted Liquids informed Mile High that it intended to sell 130 kgs of the 150 kgs shipment on consignment.

52. Mile High, however, never discussed, let alone agreed to, a consignment sale of isolate with Lifted Liquids, either in March 2019 or at any point thereafter.

53. Lifted Liquids had seven days following its receipt of the isolate on or about April 3, 2019, to inspect the product and reject it.

54. Lifted Liquids' failure to reject the product within seven days of its receipt constituted acceptance of the product.

55. Lifted Liquids never informed Mile High in April or May 2019 that it was rejecting all or some of the 150 kgs of isolate.

56. Mile High, as a wholesale manufacturer of pharmaceutical-grade products, cannot accept returns of isolate after seven days, given, among other things, risks associated with contamination and concerns about violating best manufacturing practices.

57. Mile High has contacted Lifted Liquids multiple times for payment of the outstanding balance of $825,000 for the isolate that Lifted Liquids bought and received.

58. Upon information and belief, Lifted Liquids is either still in possession of or has sold all or some of the 150 kgs of isolate that it received from Mile High.

59. Lifted Liquids has not paid Mile High for any of the 150 kgs of isolate it received from Mile High on or about April 3, 2019, and it refuses to pay the $825,000 it owes Mile High.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

60. Mile High incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

61. Mile High and Lifted Liquids had a valid, enforceable contract for Lifted Liquids' order of 150 kgs of isolate at a price of $5,500 per kg, for a total purchase price of $825,000, with payment "in full" due upon receipt.

62. On or about April 3, 2019, Lifted Liquids accepted all of the isolate that Mile High sent to it under the terms of the parties' signed March 22, 2019 Sales Order (as later modified by, and as reflected in, the March 28, 2019 Sales Order and April 1, 2019 invoice).

63. Through this affirmative conduct, Lifted Liquids accepted the terms provided for in these documents.

64. Lifted Liquids also confirmed the terms of the parties' bargain on April 2, 2019, when it thanked Mile High for shipping the 29 boxes of isolate. Through this conduct, Lifted Liquids further accepted the terms of the March 22, 2019 Sales Order (as later modified by, and as reflected in, the March 28, 2019 Sales Order and the April 1, 2019 invoice).

65. Lifted Liquids' failure to timely notify Mile High of any objection to the terms of the March 28, 2019 Sales Order, the April 1, 2019 invoice, and the April 2, 2019 email, constituted acceptance of the terms provided for in those documents.

66. Mile High performed as promised under the terms of the parties' agreement by, among other things, shipping Lifted Liquids 150 kgs of isolate.

67. But Lifted Liquids did not, on or about April 3, 2019, pay "in full" for the 150 kgs of isolate it received; in fact, Lifted Liquids paid Mile High nothing on April 3, 2019, has never paid anything for the 150 kgs of isolate, and refuses to pay Mile High the $825,000 it owes.

68. Lifted Liquids is in breach of the parties' contract for the purchase of 150 kgs of isolate at $5,500 per kg with payment "in full" due upon receipt.

69. As a result of Lifted Liquids' breach, Mile High has sustained damages.

## SECOND CLAIM FOR RELIEF
**(Promissory Estoppel)**

70. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

71. Prior to sending 150 kgs of isolate to Lifted Liquids, Mile High provided Lifted Liquids with a March 22, 2019 Sales Order, a March 28, 2019 Sales Order, an April 1, 2019 invoice, and an April 2, 2019 email, which collectively stated the quantity, purchase price, and terms governing Lifted Liquids' purchase of isolate.

72. Based on the prior course of performance between Mile High and Lifted Liquids, including the parties' March 22, 2019 and March 28, 2019 Sales Orders, the April 1, 2019 invoice, and/or the parties' April 2, 2019 emails, Lifted Liquids ordered and accepted 150 kgs of isolate. Under such circumstances, Lifted Liquids knew or should have known that Mile High expected to be paid $825,000 with payment due at the time Lifted Liquids accepted the isolate.

73. Lifted Liquids promised to pay Mile High $825,000 for 150 kgs of isolate.

74. Mile High reasonably relied to its detriment upon Lifted Liquids' promise.

75. Lifted Liquids failed to abide by its promise and, despite accepting receipt of 150 kgs of isolate, has unreasonably withheld payment of $825,000 for it.

76. As a result, Mile High has sustained damages.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment – Alternative Theory of Liability)

77. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

78. Lifted Liquids has received a substantial benefit at Mile High's expense, as described above.

79. Lifted Liquids has been unjustly enriched by the acceptance of 150 kgs of isolate, which it may sell or may have already sold for a profit.

80. It would be unjust to allow Lifted Liquids to receive such profit for a product that it never paid for.

81. Lifted Liquids owes Mile High the reasonable market value of the isolate (calculated at the time of purchase) that Mile High provided to Lifted Liquids.

### FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

82. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

83. During the course of its trade or business, Lifted Liquids negligently provided Mile High false information when it ordered 150 kgs of isolate without notifying Mile High that it intended to change the agreed to terms of that transaction and/or the parties' previous transactions.

84. During the course of its trade or business, Lifted Liquids negligently provided Mile High false information or negligently omitted material information related to the transaction

when it ordered an additional 150 kgs of isolate and accepted the terms of the March 22, 2019 Sales Order, as modified and reflected in the March 28, 2019 Sales Order and the April 1, 2019 invoice, without informing Mile High that it would not agree to the terms in those documents.

85. Alternatively, during the course of its trade or business, Lifted Liquids negligently omitted pertinent information when it ordered an additional 150 kgs of isolate without communicating to Mile High its intended purchase terms.

86. Lifted Liquids intended for Mile High to rely on the aforementioned false information and/or omitted pertinent information during the course of the transaction between Mile High and Lifted Liquids for the sale of 150 kgs of isolate.

87. Mile High reasonably relied upon Lifted Liquids' acceptance of the terms of the Sales Orders and April 1, 2019 invoice.

88. As a result, Mile High has sustained damages.

### FIFTH CLAIM FOR RELIEF
### (Civil Theft, C.R.S. § 18-4-405)

89. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

90. Lifted Liquids knowingly obtained or exercised control over Mile High's property: the isolate that Mile High provided to Lifted Liquids and for which Lifted Liquids has failed to pay and refused to pay.

91. Lifted Liquids knew, based on its prior dealings with Mile High, including the March 22, 2019 Sales Order, the March 28, 2019 Sales Order, and/or its industry experience, that it could not return the isolate to Mile High after it accepted the product unless Lifted Liquids

rejected the product within seven days of receipt, which Lifted Liquids did not do. The isolate has been in Lifted Liquids' possession so long that it is now potentially contaminated.

92. By accepting the product and refusing to pay for it, Lifted Liquids' conduct proves that it intended and intends to permanently deprive Mile High of the use and benefit of the property.

93. Moreover, it is not clear that Mile High could demand return of the isolate. In fact, upon information and belief, Lifted Liquids sold all or some of the 150 kgs of isolate. Despite the fact that Lifted Liquids has sold at least some of the isolate it unfairly stole from Mile High, it has never paid Mile High anything for the Sale.

94. Lifted Liquids' actions have caused and will continue to cause damages to Mile High.

95. Further, Lifted Liquids' actions were and are attended by circumstances of bad faith, fraud, malice, or willful and wanton conduct. Lifted Liquids knew before Mile High sent it 150 kgs of isolate that Mile High intended to be paid "in full." But Lifted Liquids did not intend to pay Mile High $5,500 per kg and yet nevertheless accepted receipt of all 150 kgs of isolate. Lifted Liquids also knew when it accepted 150 kgs of isolate that it did not intend to perform as Mile High expected by paying upon receipt. Lifted Liquids' willful and wanton acts were undertaken in fraudulent bad faith, and Mile High is entitled to an award of treble damages, costs, and attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(Civil Fraud/Deceit)**

96. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

97. Lifted Liquids made false representations of fact when it agreed to buy 150 kgs of isolate at a price of $5,500 per kg and agreed to pay "in full" upon receipt.

98. These false representations include, but are not limited to, that Lifted Liquids would pay Mile High "in full" for the 150 kgs of isolate "upon receipt," when, in fact, Lifted Liquids intended to only pay Mile High for the Sale (if at all) on a contingency basis.

99. Lifted Liquids knew its representations were false at the time they were made.

100. The amount, purchase price, and payment terms were material to the transaction.

101. Lifted Liquids made its representations with the intent that Mile High would rely on them in agreeing to the transaction and in sending Lifted Liquids 150 kgs of isolate.

102. Mile High relied on Lifted Liquids' representations by, among other things, sending Lifted Liquids 150 kgs of isolate.

103. Mile High's reliance was justified.

104. The reliance caused damages to Mile High.

### SEVENTH CLAIM FOR RELIEF
**(Fraudulent Inducement/Concealment)**

105. Mile High incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein.

106. Lifted Liquids concealed material facts when it failed to disclose its intent to buy the isolate on consignment, contrary to the parties' prior course of dealing and contrary to the terms of the parties' signed March 22 and March 28 Sales Orders and the April 1, 2019 invoice.

107. At the time that Lifted Liquids concealed these material facts, it knew or should have known that they should be disclosed to Mile High because they were critical to the transaction and to Mile High's agreement to provide isolate to Lifted Liquids.

108. Lifted Liquids intended that Mile High would act upon Lifted Liquids' concealment—as evidenced by, among other things, Lifted Liquids' acceptance of the 150 kgs of isolate that Mile High had shipped to it.

109. Mile High was not aware of facts Lifted Liquids concealed. Namely, Mile High did not know that Lifted Liquids did not intend to pay $5,500 per kg of isolate, that Lifted Liquids did not intend to pay the full invoiced amount, and that Lifted Liquids did not intend to pay "in full" upon receipt. Mile High would not have shipped 150 kgs of isolate to Lifted Liquids had Mile High been aware of these facts.

110. Lifted Liquids' concealment of material facts has resulted in damages to Mile High.

## RESERVATION

111. Mile High reserves the right to amend its Complaint to add allegations, claims, or remedies that may be developed through further investigation and discovery.

## PRAYER FOR RELIEF

Mile High respectfully prays for judgment against Lifted Liquids as follows:

1. Compensatory damages;

2. Treble damages;

3. Pre-judgment and post-judgment interest as provided by the terms of the parties' contract and/or any applicable law, including, but not limited to, C.R.S. § 5-12-102;

4. Attorneys' fees and costs; and

5. Such other or further relief this Court deems proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated:  August 30, 2019  Respectfully submitted,

*s/ Marissa S. Ronk*
Marissa S. Ronk
Jennifer J. Oxley
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:  ronk@wtotrial.com
            oxley@wtotrial.com

Attorneys for Plaintiff
Mile High Labs, Inc.